IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| MICHAEL A. DIXON, | ) | |
| | ) | |
| PLAINTIFF, | ) | C.A. No. 3:13-CV-1521-MBS-KDW |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SAM'S EAST, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Plaintiff Michael Dixon ("Dixon" or "Plaintiff"), filed this action against his employer, Sam's East, Inc. ("Sam's" or "Defendant"), alleging race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Plaintiff's claims focus on his not being promoted or transferred to other positions and his allegedly disparate treatment in the way he was disciplined.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant's Motion for Summary Judgment. ECF No. 34.  Having considered the Motion; Plaintiff's Response, ECF No. 38; Defendant's Reply, ECF No. 39; and applicable law, the undersigned recommends that Defendant's Motion for Summary Judgment be *granted* and this matter be ended.

I.     Standard of Review

A.  Motions for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

---

[1] Much of Plaintiff's argument focuses on various actions or non-actions by George Turosik ("Turosik"), Pl.'s Mem. 1-7, who was the General Manager at the Columbia Sam's from August 2011 until he was transferred to another Sam's Club in February of 2013, *see* Declaration of Market Human Resources Manager Suzanne Holliday ("Holliday Decl.") ¶ 14, ECF No. 34-3.

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The

court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. *See id.* at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

    B.  Proof of Title VII Claims

    Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence. When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff does not argue he has presented any direct evidence of discrimination, *see* Pl.'s Mem. 4-5, so the court considers his claims under the burden-shifting framework. Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. *Merritt v. Old Dominion Freight*, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of

the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff alleging that he was treated less favorably in promotions because of a protected characteristic must establish a prima facie case by showing that: "(1) []he is a member of a protected group, (2) []he applied for the position in question, (3) []he was qualified for that position, and (4) the defendants rejected h[is] application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005). After establishing his prima facie case, a plaintiff who alleges a failure to promote can "prove [the legitimate, nondiscriminatory reason proffered by the defendant was merely] pretext[ual] by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 259 (4th Cir. 2006). In evaluating relative qualifications, the court's analysis must be "based on the criteria that the employer has established as relevant to the position in question." *Id.* The Fourth Circuit has held that when comparing the relative qualifications of two candidates, the plaintiff must make "a strong showing that his qualifications are demonstrably superior to the qualifications of the successful employee." *Id.* at 261-62. Further, when "a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Id.* at 261.

To make out a prima facie case of disparate treatment, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job and his performance satisfied his employer's expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside his protected class received more favorable treatment. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "Liability in a disparate-treatment case

4

depends on whether the protected trait actually motivated the employer's decision." *Young v. United Parcel Serv.,* 135 S. Ct. 1338, 1345 (2015) (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003)).

While intermediate evidentiary burdens shift back and forth, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff. *See Reeves,* 530 U.S. at 146-47 ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.'") (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993)).

II.    Background Facts[2]

Plaintiff began working for Sam's at its Columbia, South Carolina location in December 1997.[3] He has held several positions, including that as a Check-Out Supervisor ("COS"), to which he was promoted in February 2007. *See* Holliday Decl. ¶ 3. In October of 2011, Plaintiff applied for and was transferred to the position of Fax Order Sales Partner. In July of 2013, Plaintiff was promoted to a position as a Claims Associate, a position he continued to hold at

---

[2] To the extent possible, the undersigned sets out facts regarding Plaintiff's employment history, including his disciplinary history, and his claims, chronologically. In considering this Motion, the court considers all facts in the light most favorable to Plaintiff. According to Defendant's Motion, Plaintiff did not conduct written discovery or take any depositions in this matter, and the discovery period ended in July 2014. As an apparent result, Plaintiff provides only cursory facts, citing principally to his deposition testimony. Pl.'s Mem. 1-3. Plaintiff's testimony is competent evidence as to events as to which he has personal knowledge. However, some of his testimony is speculative in nature, making it inadmissible in considering summary judgment. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62.

[3] According to Plaintiff's memorandum, he is a college graduate and a veteran of the United States Army, having served four years as an enlisted soldier and nine years as an officer. Pl.'s Mem. 1.

least as of the time of Plaintiff's response to Defendant's Motion. *Id.* ¶¶ 8-13; Def.'s Mem. 7; Pl.'s Mem. 3.

Plaintiff notes that, while employed by Defendant, he has a history of tardiness; he explains that some of the "paper" concerning his attendance issues was justified and some was not. Pl.'s Dep. 42-43. In November of 2010, Plaintiff received an evaluation from his supervisor Yolanda Mims (African American), in which she noted that Plaintiff "needs to work on his tardies." Holliday Decl. ¶ 6; Pl.'s Dep. 42-43.

Over the relevant course of Plaintiff's employment by Defendant, he has received several "counseling(s) requiring corrective action" (called "coachings" in Sam's parlance). Holliday Decl. ¶ 5. Sam's system includes several levels: Verbal Coaching (the first step, which has no effect on compensation or other terms or conditions of employment); Written Coaching; and Decision-Making Coaching (the final step before termination).[4] Plaintiff's coachings each remained active for 12 months. *Id.* If an employee receives a second coaching (while a first coaching remains active), that employee is not considered eligible for transfers or promotions to other positions. Pl.'s Dep. 23-24. If an employee receives a Verbal Coaching and does not receive any other Coachings for 12 months, the Verbal Coaching expires and is no longer active. *See* Holliday Decl. ¶ 10.

On April 30, 2011, Plaintiff received a Verbal (now considered a First Written) Coaching for his attendance and punctuality, which was caused by him being late for work on multiple occasions. ECF No. 34-2 at 46 (noting Plaintiff had "4 unapproved absences due to tardies"). This Coaching was issued by his then-manager, Lavern Harrison (African American). *Id., see*

---

[4] Sam's terminology of the levels changed as of April 19, 2012. As noted on the print-outs of the coachings Plaintiff received, what had been called a "Verbal Coaching" became a "First Written Coaching;" what had been a "Written Coaching" became a "Second Written Coaching;" and the next level went from being called a "Decision-Making Coaching" to a "Third Written Coaching." *See* ECF No. 34-2 at 43-46.

*also* Pl.'s Dep. 34-36. This Coaching states that "[g]oing forward he will be expected to come to work on time when scheduled." ECF No. 34-2 at 46. In deposition, Plaintiff testified he took issue with this Verbal Coaching and believed "it should have been taken out," but he did not remember why. Pl.'s Dep. 34-35.

Defendant used a computerized career preference system in which employees could note in what departments their interests lay so that, when positions became open in those departments, employees could be advised and potentially given interviews for such positions. *See* Pl.'s Dep. 16. Plaintiff testified that, around October 2011, he noticed he had not been informed about various management positions that would have matched with his career preference designations. *Id.* Plaintiff specifically references a management position in the produce department, which he had specifically listed in his career preference. A COS at the time, Plaintiff asked his then-supervisor Levina Morris (African American) why he had not received notice or an interview. Plaintiff also indicates he spoke with the produce manager, Lavern Harrison (African American), and asked why he had not been interviewed for the opening in the produce department. Pl.'s Dep. 17. Plaintiff testified that he was informed his personnel file had been "red flagged" for poor performance. Pl.'s Dep. 17-19.[5] Plaintiff indicated to the supervisor that his last five annual performance reviews were not negative, noting he had received evaluations at the "solid performer" level or above.[6] Pl.'s Dep. 21. Plaintiff provides a copy of his annual evaluation for the period from December 18, 2010 through December 17, 2011, which gives him an overall performance rating of "Solid Performer." ECF No. 38-2 at 1-3. Plaintiff testified that, when he

---

[5] Plaintiff references having spoken with both Morris and Harrison about this. It is not completely clear which person responded to him. *See* Pl.'s Dep. 19-22.

[6] In his memorandum, Plaintiff indicates "solid performer" was a mid-level categorization—above it were "exceeds expectations" and "role model," and there were several lower levels. Pl.'s Mem. 2 n.1.

followed back up with management inquiring about the "red flag" on his file, he was told it was a "computer glitch." Pl.'s Dep. 17-18.

Plaintiff testified that someone named Rohan (African American) had received the position in produce. Pl.'s Dep. 20-21. In addition to the produce position about which he was not informed and for which he was not interviewed, Plaintiff testified there might have been "three or four" positions about which he should have been advised but was not. Pl.'s Dep. 18-19. He references a possible position in electronics and one in the "center section." Pl.'s Dep. 18-21. Plaintiff recalled someone named "Hector" (Hispanic) got the position in electronics. Pl.'s Dep. 20. After Hector, a female named "Andrea" who was possibly of Indian ethnicity was put in the electronics position. *Id.* He did not recall last names.

In October of 2011, Plaintiff applied for and was approved to transfer into the position of Fax Order Sales Partner (commonly referred to as the "Click and Pull" position). Pl.'s Mem. 18, 23, 30. Plaintiff was selected for this position by Denise James (African American) and Crystal Smith-Brown (African American). *Id.* at 23. In this position, Plaintiff was responsible for receiving and pulling items together for customers who sent orders to the Club by fax or email. Holliday Decl. ¶ 8. In the Fax Order Sales Partner position, Plaintiff did work previously done by two employees (one full-time and one part-time). Nevertheless, he succeeded in reaching and obtaining double-digit growth in sales many weeks, without any assistance. Pl.'s Dep. 31; *see* ECF No. 38-1.[7]

According to Holliday, between August and December of 2011, Plaintiff was considered for three open positions (one Department Manager position and two Team Leader positions).

---

[7] Plaintiff also testified that, although Turosik often sent Club-wide emails recognizing and congratulating departments on excellent performance, he never initiated an email recognizing the double-digit growth each week in the Click-and-Pull department when Plaintiff began working there. *See* Pl.'s Dep. 68-70; ECF Nos. 38-1 and 38-3 (statistics of Click-and-Pull department and several emails).

Plaintiff was not the most qualified candidate. The positions were filled respectively by an African-American male on October 27, 2011, an African-American male on September 14, 2011, and a Hispanic female on August 26, 2011. Holliday Dec. ¶ 9.[8]

On December 22, 2011, Plaintiff received a Written Coaching (known as a "Second Written Coaching" under Defendant's post-April 19, 2012 nomenclature) for his attendance and punctuality. ECF No. 34-2 at 45. The Coaching, given by his then-supervisor James, states, "Since [Plaintiff's] last coaching on 4/30, [Plaintiff] has 5 additional exceptions of which 4 are caused by tardies and on[e] no call no show." *Id.* In the "Action Plan" section, the following is written, which seems to be Plaintiff's response to the Coaching: "coaching from 4/30 should not have been done or taken out. Will come in on time, fax and pull was suppose[d] to operate on every other saturday [sic] but that was change[d] without my knowledge." *Id.* In deposition, Plaintiff indicates he felt James was being unfair and "doing [Turosik's] bidding" and trying to "get [Plaintiff] out of the building." Pl.'s Dep. 30. Plaintiff indicated that, prior to his moving to Fax and Pull, that position was not scheduled for Saturday work; however, when he began doing that job alone, they began scheduling him on Saturdays and "that's where the no call no shows come in." Pl.'s Dep. 31. Plaintiff noted he had not been checking the work schedule but, after the Coaching, James advised Plaintiff he was to be working every other Saturday. *Id.* at 32.

When Plaintiff received his Written Coaching on December 22, 2011, he was no longer eligible for promotion or transfer until the Coaching expired. Pl.'s Dep. 23-25. Defendant's Coaching for Improvement Policy states, "You may not be eligible for promotion or transfer if you have an active (within 12 months) Second Written level of coaching." Holliday Decl. ¶ 10.[9]

---

[8] Holliday's Declaration does not identify the three positions by name.

[9] Plaintiff acknowledges the Policy but takes issue with some of the coachings he received. *See, e.g.*, Pl.'s Dep. 24-25 ("But, you could coach me a couple of times on some bogus stuff and then

On May 30, 2012, Plaintiff received a Third Written Coaching for his attendance and punctuality, which was caused by him being late to work. ECF No. 34-2 at 43-44 ("[Plaintiff] has 3 attendance exceptions in the past 6 months all caused by tardies."); *see* Pl.'s Dep. 25-29. This Coaching was also issued by his supervisor Denise James. Plaintiff claims that this Coaching was the result of his not going back to check to ensure that his time adjustments were made properly. Pl.'s Dep. 25-29. He explained that sometimes he was supposed to start work at 5:00 and no one would arrive to open the building until 5:10, so he would enter "in a rush trying to get to going to work" and punch in and assume the time punched was accurate. *Id.* at 27-28.

Plaintiff was required to complete an Action Plan with the Third Written Coaching. The Action Plan included two items. The first was for him to follow up with the personnel department to make sure that all of his time punches and adjustments were accurate. ECF No. 34-2 at 44. The Action Plan also required Plaintiff to "over-communicate" by emailing management staff with any "concerns/issues regarding Click-N-Pull program instead of just informing the opening/manager on duty." *Id.*

In June 2012, Asset Protection Manager Lee Williams (Caucasian) was informed that Plaintiff had been making numerous time adjustments. A review of video surveillance revealed that Plaintiff was falsely adjusting his time. *See* ECF No. 34-2 at 47-53. For example, according to a timeline Williams prepared after reviewing video, on May 10, 2012, Plaintiff clocked in at 4:16 and adjusted his time to 4:05. Williams indicates that the video showed that he did not arrive in the parking lot until 4:12. *Id.* at 47. There were two other similar examples of false time entries. *Id.*

---

therefore, make me ineligible for the --."). Plaintiff does not provide non-speculative evidence to elaborate.

Plaintiff testified that he was not falsifying his time punches, noting he explained to management that he may have entered the incorrect time based on his inaccurate, inexpensive wrist-watches. Pl.'s Dep. 43-47. Plaintiff testified that he had no reason to dispute the accuracy of Williams' investigation and report.   Pl.'s Dep. 43-47. Plaintiff agreed that it was his responsibility to enter the correct time and that it was not Defendant's fault that Plaintiff's watches were not working properly. *Id.* at 47-48.

Because Plaintiff had an active Third Written Coaching, the next step in Defendant's discipline process could have been to terminate him. Pl.'s Dep. 49. Defendant's Coaching for Improvement policy states, "If your unacceptable job performance or conduct warrants a level of coaching and you have already received a Third Written level of coaching within 12 months immediately preceding the unacceptable job performance or conduct, you will be subject to termination." Holliday Dec. ¶ 12. Plaintiff notes that, although Defendant had grounds to terminate him, he was permitted to remain an employee. *Id.* at 49.

In July 2013, after Plaintiff's Coachings had expired, Plaintiff applied for and was promoted to a Claims Associate position. Pl.'s Dep. 59-61. This position was two pay grades above Plaintiff s position as Fax Order Sales Partner and resulted in a pay increase. *Id.* at 61.

III.    Analysis

Plaintiff alleges racial discrimination, focusing mainly on his not being transferred or promoted. He also claims discrimination based on his allegedly disparate discipline and more general treatment by Turosik. Both Plaintiff and Defendant analyze all of Plaintiff's claims utilizing the *McDonnell Douglas* burden-shifting framework for disparate treatment. *See* Def.'s Mem. 8, Pl.'s Mem. 4-5.

A.  Prima Facie Case

Defendant first argues summary judgment is appropriate because Plaintiff cannot make out a prima facie case of disparate treatment. To do so, he must show the following: (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of Plaintiff's protected class received more favorable treatment. *See, e.g., Prince-Garrison v. Md. Dept. of Health and Mental Hygiene*, 317 F. App'x 351, 353 (4th Cir. 2009) (*per curium*); *see also Coleman*, 626 F.3d at 190.[10]

It is undisputed that Plaintiff is a member of a protected class. Defendant argues Plaintiff cannot demonstrate he was performing his job satisfactorily, noting Plaintiff's admitted problems with arriving at work when scheduled and with recording his time accurately. Def.'s Mem. 8 (citing to Pl.'s Dep. 25-36, 42-56, 60). Plaintiff disagrees, arguing he can satisfy this prong of his prima facie case because he remains employed by Defendant, was recently promoted, and received a "Solid Performer" review in 2011. Pl.'s Mem. 5 (citing to Pl.'s Dep. 57 and ECF No. 38-2 (2011 evaluation)).

Plaintiff argues he has created an issue for the trier of fact because his 2011 "Solid Performer" evaluation "in and of itself" is "at odds with [Defendant's] claims he was a 'poor performer.'" Pl.'s Mem. 5. It is not clear whether Plaintiff is arguing that the evaluation clashes with Defendant's summary-judgment argument or with Plaintiff's testimony that he had been told his file was "red flagged" for poor performance based on a "computer glitch."

In any event, the undersigned finds Plaintiff has not established this element of his prima facie case. While it is undisputed that Plaintiff's overall performance rating for 2011 was that of

---

[10] Out of an abundance of caution, the undersigned also considers below Plaintiff's failure-to-transfer argument based on the elements as set forth in *Anderson v. Westinghouse Electric*, 406 F.3d at 268. As discussed below, the separate analysis does not impact the recommendation.

a "Solid Performer," it is also undisputed that Plaintiff had issues with arriving at work on time. In fact, as discussed in detail above, Plaintiff received several coachings concerning his tardiness and failure to report to work as scheduled. Plaintiff concedes that he had some issues with arriving at work on time. Pl.'s Dep. 43. Although Plaintiff takes issue with some of the coachings, his reasons are largely speculative. *See, e.g.,* Pl.'s Dep. 34-35 (noting he believed the April 2011 Verbal Coaching "should have been taken out," but not recalling why); *id.* at 25-29 (discussing Plaintiff's May 2012 Third Written Coaching and explaining his version of why he received it). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis*, 53 F.3d at 62.

In any event, in determining whether an employee has met an employer's legitimate job expectations, it is the *employer's* perception that is relevant, not the employee's self-assessment. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (citing *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)). "The relevant time to evaluate [ ] an employee's performance is at the time of the adverse action." *Wells v. Briggs Constr. Equip. Inc.*, C/A No. 3:08-3634-JFA-PJG, 2010 WL 2991673, at *4 (D.S.C. May 12, 2010) (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005)), *adopted,* 2010 WL 2991681 (Jul. 28, 2010). Regardless of whether Plaintiff believed he should have received the coachings concerning his timeliness, the record is undisputed that management believed he had timeliness issues that required coaching.

Further, although Plaintiff seeks to make much of the supposed "computer glitch" that had placed a "red flag" on his personnel file, the only evidence that this took place is hearsay proffered only by Plaintiff. *See* Pl.'s Dep. 17-18 (Plaintiff's testifying Harrison told him a computer glitch had caused his file to be red-flagged). As noted by Defendant, Plaintiff sought

no discovery on this issue. Def.'s Reply 3. The law does not permit a plaintiff to rely on hearsay to defeat a properly supported summary judgment motion. *See Md. Highways Contractors Ass'n v. State of Md.,* 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Summary judgment could be granted based on Plaintiff's failure to satisfy the second element of his prima facie case—that he was performing satisfactorily. The court notes that some case law considering failure-to-transfer/promote does not include a satisfactory-performance element in the prima facie case. *E.g., Anderson v. Westinghouse Elec.*, 406 F.3d at 268. The court considers the *Anderson* criteria separately below. Additionally, the court considers the remaining elements discussed by the parties—whether Plaintiff suffered an adverse employment action and whether similarly situated employees received more favorable treatment.

Defendant argues that Plaintiff cannot satisfy the third element because Plaintiff has suffered no adverse employment action. Def.'s Mem. 9-10. "An adverse employment action is a discriminatory act which 'adversely affects the terms, conditions, or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted). Defendant argues Plaintiff's coachings did not constitute an adverse employment action. *See, e.g., Dawson v. United States*, 549 F. Supp. 2d 736, 742 (D.S.C. 2008) (finding poor performance reviews and written reprimands did not constitute adverse employment actions). Defendant also argues the positions Plaintiff claims he did not receive would have been lateral transfers, which would not be considered to have impacted his compensation, benefits, or working conditions. Def.'s Mem. 9-10.

In response, Plaintiff submits that his deposition testimony is "lush with examples of times when he was passed over for promotions[,]" making this issue a question of fact. Pl.'s

Mem. 6. Plaintiff points to Defendant's citation of authority that includes "reduced opportunities for promotion" as an example of an adverse employment action. *Id. See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (noting "typical requirements" of showing an adverse employment action include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").

As discussed above, Plaintiff's testimony as to promotions for which he was allegedly passed over is based in large measure on unsupported, speculative testimony. *E.g.*, Pl.'s Dep. 17-19 (testifying he was told that his personnel file had been "red flagged" for poor performance, making him ineligible for transfers at one time). Further, Defendant's established policy prohibits employees with two active coachings from being considered for transfer. Holliday Decl. ¶ 10. Plaintiff concedes that policy applied to him upon receiving his second coaching in December 2011. Pl.'s Dep. 23-25. Although Plaintiff took issue with some of the coachings he received, he was unable to provide competent testimony as to why that was so. *See, e.g., id.* at 36 (noting he had disputed the April 2011 Coaching but was unable to remember the reason).

Plaintiff's testimony as to generally being passed over for promotions is not sufficiently specific to satisfy his burden on this element of the prima facie case. *See Beale*, 769 F.2d at 214; *Ennis*, 53 F.3d at 62. Accordingly, summary judgment could be granted without additional analysis. Nonetheless, the undersigned considers the fourth and final element of Plaintiff's prima facie case.

Even assuming, *arguendo*, that Plaintiff could be considered to have satisfied the first three elements of his prima facie case, he has not satisfied the fourth element—that similarly situated employees outside his protected class (African American) received more favorable treatment. Plaintiff's deposition testimony that various colleagues were treated differently is far from specific enough to support this element. For example, Plaintiff admits he cannot recall even

the full names of employees who were placed in the positions he referenced in his deposition. Pl.'s Dep. 19-20 (noting "Hector," who was "Hispanic" received the electronics position and, after Hector left, "Andrea," whose race was possibly an "Indian" mix got that position). Additionally, Plaintiff was unable to provide full names or other information regarding any "white person who had less experience than you that got a team leader position[.]" *Id.* at 38. Rather, Plaintiff responded there was a "guy, Brad" and "somebody in photo." *Id* at 38-39. *See Ward v. City of N. Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006) (noting requirement of establishing "other employees" were similarly situated in all relevant respects; that they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (internal citations omitted). In addition, Plaintiff noted that someone from his own protected class—an African-American male named "Rohan"—received the produce position. Pl.'s Dep. 20-21.

Plaintiff briefly argues he satisfies his burden with his "explicit[]" testimony about a position that was filed with "two people, Hispanic and Indian, respectively, over him." Pl.'s Mem. 6. To the contrary, Plaintiff's testimony falls far short of what he is required to proffer at this juncture. *See Ward*, 457 F. Supp. 2d at 643. Plaintiff is unable to provide last names for these individuals, much less provide any of their relevant personnel information.

The court also notes that, in responding to this portion of Defendant's Motion, Plaintiff refers to several other portions of his deposition as support, including Turosik's allegedly not providing Plaintiff with the same positive reinforcement as he did other employees and that Turosik reprimanded Plaintiff concerning a social conversation he had during work hours. Pl.'s Mem. 6. None of this testimony assists Plaintiff in establishing a prima facie case. Accepting as true that the Click-and-Pull Department flourished during Plaintiff's watch and that he was

having a work-related conversation with a colleague when Turosik verbally reprimanded him, these facts do not demonstrate any sort of discrimination. Neither of these would be adverse employment actions. Additionally, Plaintiff has not provided the detailed information about others who were treated differently to satisfy the similarly-situated element.

Plaintiff cannot establish a prima facie case as to this racial-discrimination claim, making summary judgment appropriate.

B.  Prima Facie Case Based on *Anderson* Elements

In arguing he has satisfied his prima facie burden of proving Title VII race discrimination, Plaintiff alternatively argues he is not required to establish that he has satisfactory job performance because Defendant does not argue he did not receive any promotions "due to poor job performance, but rather only that others were 'more qualified' . . . ." Pl.'s Mem. 5. Plaintiff cites no law for this position. However, the court acknowledges that, when considering discrimination claims based on a failure to promote, the elements of the prima facie case do not necessarily include the prong of establishing satisfactory performance. A plaintiff alleging that he was treated less favorably in promotions because of a protected characteristic may establish a prima facie case by showing that: "(1) []he is a member of a protected group, (2) []he applied for the position in question, (3) []he was qualified for that position, and (4) the defendants rejected h[is] application under circumstances that give rise to an inference of unlawful discrimination." *Anderson,* 406 F.3d at 268.

Affording Plaintiff every benefit of the doubt, the undersigned has considered Plaintiff's specific failure-to-transfer/promote claims using *Anderson*'s statement of the prima facie elements. Having done so, the recommendation remains the same: Plaintiff cannot establish a prima facie case.

Plaintiff has provided only his own deposition testimony regarding the other positions. That testimony is not sufficiently specific to permit Plaintiff to demonstrate he actually applied for the positions, was qualified for the positions, and was rejected "under circumstances that give rise to an inference of unlawful discrimination." 406 F.3d at 268. For example, regarding the produce position, Plaintiff testified he did not actually apply for the position because he was not made aware of it. Plaintiff has offered no evidence of his specific qualifications for any position, other than to state he was a "long-term employee with a college degree and thirteen (13) years of experience in the Army, including nine (9) as an officer." Pl.'s Mem. 5. Plaintiff's length of service with the Army and with Sam's, as well as his education background, appear to be undisputed. They in no manner demonstrate he was qualified for the produce position he references. In addition, Plaintiff acknowledges that the person who was chosen for the produce position at that time was also African American. Pl.'s Dep. 20-21. Plaintiff also specifically references a position in electronics for which he was not chosen during the same time frame. *See* Pl.'s Dep. 19. He offers no additional detail regarding that position and cannot establish a prima facie case based on it.

Because Plaintiff cannot establish a prima facie case of disparate treatment under either analysis, summary judgment is appropriate.

C.  Pretext Analysis

In any event, assuming Plaintiff has set forth a prima facie case, he has not set forth evidence to overcome Defendant's stated business reasons for not transferring/promoting Plaintiff or its reasons for the coachings. Defendant has explained that Plaintiff was not the most qualified candidate for the three positions for which he was considered between August and December 2011. Holliday ¶ 9. As noted above, Plaintiff has not provided competent evidence as to his qualifications when compared to the qualifications of the hires. Defendant also notes that

the coachings are based on "objective attendance and punctuality records." Def.'s Mem. 11. Although Plaintiff takes issue with some of the coachings, he has not provided evidence that indicates they were inaccurate when given, nor has he offered any evidence linking them to improper racial discrimination.

Contrary to Plaintiff's argument, *see* Pl.'s Mem. 7, the burden of providing details regarding the comparators who were treated differently is on *Plaintiff*, not Defendant. Plaintiff submits that "Defendant has not produced any real or meaningful evidence to show that other candidates who were ultimately hired over Plaintiff were more qualified." *Id.* Plaintiff misapprehends his burden of proof. As Defendant notes in Reply, Plaintiff overstates the defense burden in the pretext stage. Def.'s Reply 4-5. *See Heiko*, 434 F.3d at 259 (noting relative employee qualifications are valid, nondiscriminatory bases for any adverse employment decision).

Once an employer has given a legitimate, nondiscriminatory reason for its questioned action, it is not the court's province to determine whether "the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [alleged adverse employment action against the plaintiff]." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). Stated another way, Defendant is not required at this juncture to persuade the court that the reasons it proffers are based in fact. It was not Defendant's burden to provide the back-up documentation Plaintiff suggests is lacking. Rather, it is *Plaintiff* who has the burden of presenting competent evidence to overcome these legitimate, non-discriminatory reasons for Defendant's hiring decisions by showing those reasons were merely pretextual and that the "real reason" Plaintiff was not chosen for the positions he has referenced or the reasons he was coached were because he was African American. *See Merritt,* 601 F.3d. at 294 ("The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff]

has been the victim of intentional discrimination, which at all times remains with the plaintiff.") (internal quotation marks and citations omitted). For a plaintiff to prove an employer's articulated reason is a pretext for discrimination, he "must prove *both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct." *Jimenez* v. *Mary Wash. Coll.,* 57 F. 3d 369, 378 (4th Cir. 1995) (emphasis in original) (internal quotation marks and citations omitted).

Plaintiff also argues he has demonstrated the reasons given were pretextual when, "given all of his shortcomings as Defendant attempts to lay out, he was ultimately promoted after Turosik left [the Columbia Sam's]." Pl.'s Mem. 7. This evidence is insufficient to carry Plaintiff's burden at this stage. Factually speaking, Plaintiff had been ineligible for transfer-or-promotion consideration until Plaintiff's Third Written Coaching expired on May 30, 2013. *See* Holliday Decl. ¶ 10. Turosik left the Columbia Sam's in February 2013. *Id.* ¶ 14. Plaintiff applied for and received a promotion to a claims associate position in "August or July" of 2013. Pl.'s Dep. 59-61.

Plaintiff's Third Written Coaching expired after Turosik left. Plaintiff has provided no competent evidence linking Turosik to other decisions about which he complains. In addition, the investigation into Plaintiff's time adjustments took place in 2012, while Turosik remained manager of the Columbia Sam's. Although Plaintiff could have been terminated at that time, he was not.

In addition, James and Harrison, Plaintiff's supervisors who issued his coachings and reviews, were also African American. *See* Pl.'s Dep. 15, 34. *See Demesme v. Montgomery Cnty. Gov't,* 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), *aff'd* 208 F.3d 208 (4th Cir. 2000) (*per curium*); *Coggins v. Gov't of D.C.,* No. 97-2263, 1999 WL 94655, at *4

(4th Cir. 1999) ("The fact that both Krull and Gibbons, first and third in [plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."); *Myers v. Wood*, No. 0:12-CV-00422-JFA, 2013 WL 4823171, at *8 (D.S.C. Sept. 9, 2013) (finding plaintiff failed to establish prima facie race discrimination claim based in part on fact that decision-maker and plaintiff were of same race).

Reviewing all evidence in the light most favorable to Plaintiff, the undersigned finds summary judgment appropriate as to Plaintiff's entire Complaint. He simply has not demonstrated any inference of race discrimination; no reasonable jury could find in his favor.

IV.    Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendant's Motion for Summary Judgment be granted and this matter be ended.

IT IS SO RECOMMENDED.

May 19, 2015                                      Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**